IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS D. LINDSEY,

Plaintiff,

v.

CHONG XIONG and GHITA HAMIDI,

Defendants.[1]

OPINION and ORDER

24-cv-712-jdp

---

Plaintiff Carlos D. Lindsey, proceeding without counsel, is a prisoner at Columbia Correctional Institution. Lindsey alleges that defendant Ghita Hamidi tased him while he was restrained and defendant Chong Xiong failed to stop Hamidi from doing so. Lindsey also alleges that Hamidi and Xiong unreasonably strip searched him. I granted Lindsey leave to proceed on claims against Hamidi and Xiong under the Fourth and Eighth Amendments. Dkt. 7, at 7. Defendants move for summary judgment, Dkt. 54, and I will grant their motion because the undisputed facts show that Hamidi's use of force was justified, and Xiong acted reasonably while conducting his staff-assisted strip search of Lindsey.

BACKGROUND

I draw the following facts mostly from Hamidi's body camera footage, which is dispositive. I also rely on footage from a CCI staff member's handheld camera, the parties' proposed findings of fact, and Lindsey's declaration made under penalty of perjury. These facts are undisputed unless otherwise noted.

---

[1] I have updated the case caption to correct a typographical error in the spelling of defendant Ghita Hamidi's name.

Hamidi received reports that Lindsey had "inserted," which Hamidi understood to mean that Lindsey had inserted something into his body cavities.[2] Hamidi decided to remove Lindsey from his cell using a cell extraction team so that he could be searched for contraband and then assessed at CCI's Health Services Unit. Lindsey initially agreed to be restrained, making a cell extraction unnecessary. Lindsey was placed in a restraint chair and transported to a holding cell for a strip search. Along the way, Lindsey directed threats at Hamidi and CCI staff and told them that he wasn't going to comply with a staff-assisted strip search. Outside of the holding cell, while in the restraint chair, Lindsey again stated that he wasn't going to comply. Lindsey began moving his legs and tensing his leg muscles. CCI staff held down Lindsey's legs with their knees. Hamidi placed her taser on Lindsey's lower abdomen and tased him. Lindsey was removed from the restraint chair and brought to the back of the holding cell. There, Hamidi tased Lindsey a second time. Xiong conducted a staff-assisted strip search of Lindsey.[3] The only part of the strip search at issue is Xiong's search of Lindsey's buttocks, which lasted six seconds. After the strip search, CCI staff transported Lindsey to the Health Services Unit, and once Lindsey was medically cleared, they returned him to his cell.

I will provide additional details where relevant to the analysis.

---

[2] Lindsey attempts to dispute this proposed fact, contending that it is inadmissible hearsay. Dkt. 67, ¶¶ 35–36. The proposed fact is not hearsay because it isn't being used for the truth of the matter asserted; instead, it is being used to show the statement's effect on Hamidi, which is a permissible, non-hearsay purpose. Fed. R. Evid. 801(c)(2).

[3] During a staff-assisted strip search, correctional officers maintain hands-on control of the inmate by holding onto his arms to restrain him while another officer removes the inmate's clothes and conducts the search; the officer conducting the search must physically touch the inmate during the search because the inmate is restrained. Dkt. 67, ¶¶ 21–24.

ANALYSIS

Defendants move for summary judgment, contending that Hamidi did not use excessive force against Lindsey because she tased him only to stop him from physically resisting CCI staff. Defendants also contend that Xiong's staff-assisted strip search of Lindsey was justified because he was reportedly hiding contraband in his body cavities. I will grant defendants' motion if the material facts are undisputed and defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). I will view the facts and all reasonable inferences from those facts in Lindsey's favor unless the evidence in the record utterly discredits his version of the facts such that no reasonable jury could believe him. *Raddant v. Douglas Cnty.*, No. 24-3293, 2026 WL 699609, at *4 (7th Cir. Mar. 12, 2026); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**A.  Excessive force**

The Eighth Amendment prohibits prison officials from using excessive physical force against prisoners. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). The core question for an excessive force claim is whether force was used "in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The factors relevant to this determination include: (1) why force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether the defendant perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force. *Smith v. Kind*, 140 F.4th 359, 366 (7th Cir. 2025).

Lindsey argues that Hamidi used excessive force against him by tasing him twice. "In many circumstances—often when faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification for use of a taser." *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); *see Forrest v. Prine*, 620 F.3d 739, 745 (7th

3

Cir. 2010) (taser use permissible because plaintiff posed immediate threat to safety and order). But a prison official's use of a taser is malicious when the inmate is fully restrained, docile, and compliant. *Williams v. Esser*, No. 21-2175, 2022 WL 258638, at *2–3 (7th Cir. Jan. 27, 2022). In considering whether Hamidi used excessive force, I give more details about (1) the lead-up to the first tasing incident; (2) the first tasing incident; and (3) the second tasing incident.

### 1. Lead-up to the first tasing incident

In Hamidi's experience, Lindsey is a difficult inmate to deal with because he often refuses to follow staff directives, is very unpredictable, and is at times violent. When Lindsey exited his clinical observation cell, Hamidi told him to kneel down and face forward. At first, Lindsey refused to do so, saying "Who the fuck are you talking to?" and "Or what?" Dkt. 67, ¶ 56. As CCI staff were securing Lindsey to the restraint chair, Lindsey moved his legs as if he was trying to kick the staff.[4] Lindsey said: "Is that all you've got? That shit feels good. Yeah. Makes my dick hard right now." Dkt. 57, Ex. 4 (Hamidi body cam, at 05:07–05:16). CCI staff then transported Lindsey to a holding cell to perform the strip search. Lindsey admits that, while he was being transported to the holding cell, "he was being verbally resistive and threatening" and was "making comments that he wasn't gonna comply with a staff-assisted strip search." Dkt. 63, at 4. For example, as Lindsey neared the holding cell, he told Hamidi:

> I guarantee you gonna fight me for it. You gonna work for that staff-assisted strip search today. Bitch. I ain't complying with nothing. Punk ass bitch. You gonna find that out. Right now!

Dkt. 57, Ex. 4 (Hamidi body cam, at 06:10–06:25).

---

[4] Defendants propose the following fact: "After Lindsey was placed in the restraint chair, he refused to pull his legs in, was lifting his legs, and tried to kick staff." Dkt. 67, ¶ 61. Lindsey doesn't dispute the material parts of the proposed fact. Although Lindsey might not have *tried* to kick staff, it is undisputed that his legs moved as if he were going to do so.

### 2.  The first tasing incident

The first tasing incident happened outside of the holding cell. Lindsey was still secured to the restraint chair. Lindsey said: "If y'all think I'm gonna comply with that [the staff-assisted strip search], y'all got another thing coming. Get ready to use that taser. I'm gonna make sure I'm gonna be the last person you use your taser on." *Id.* at 06:31–06:44. Hamidi asked Lindsey if he was going to comply with a strip search. Lindsey said: "No, I'm not complying with nothing." *Id.* at 06:46–06:48. Hamidi responded: "Okay, then it's gonna be assisted," meaning a staff-assisted strip search rather than a visual strip search. *Id.* at 06:48–06:49. Lindsey started moving his legs and tensing his leg muscles.[5] CCI staff held down his legs with their knees. Hamidi drew her taser. Hamidi asked Lindsey: "Are you gonna stop?" *Id.* at 06:49–06:50. Someone said: "Tase. Tase." *Id.* at 06:52. Then, Hamidi placed her taser on Lindsey's lower abdomen and tased him in drive-stun mode.[6]

### 3.  The second tasing incident

The second tasing incident happened in the holding cell, just before Xiong's staff-assisted strip search of Lindsey. As CCI staff removed Lindsey from the restraint chair to bring him to the back wall of the holding cell, Lindsey said: "Let's go. Let's go. Round one.

---

[5] Defendants propose the following fact: "Lindsey was exhibiting signs of resistance like tensing his body and stated multiple times he was not going to comply when Hamidi asked Lindsey if he was going to stop resisting." Dkt. 67, ¶ 84. Lindsey doesn't dispute the material parts of the proposed fact, and the handheld camera footage shows that Lindsey moved his legs and tensed his leg muscles.

[6] When an official uses a taser in drive-stun mode, she "presses the nose of the Taser directly on the subject's body and electricity flows between two electrodes on the end of the device." *Dockery v. Blackburn*, 911 F.3d 458, 462 (7th Cir. 2018). Drive-stun mode is used for "pain compliance . . . [to] induce[] a subject to submit to an officer's instructions." *Id.* It does not work by way of neuromuscular incapacitation. *Id.*

Round two. Let's go." *Id.* at 08:14–08:21. At the back wall of the holding cell, CCI staff immobilized Lindsey, holding him by his arms against the wall. Lindsey again said: "Let's go. Let's go." *Id.* at 08:29–08:31. Lindsey began making "target glances," which typically precede assaultive or resistive behavior and present an increased risk of injury, especially during strip searches. Dkt. 67, ¶¶ 88–91. More CCI staff approached Lindsey, and one of the staff members holding Lindsey's arm had to readjust his grip. Hamidi said: "Taser. Taser." Dkt. 57, Ex. 4 (Hamidi body cam, at 08:40–08:43). Lindsey screamed. Then, Lindsey said: "I'm not resisting." *Id.* at 08:42–08:44.

### 4. Conclusion

Lindsey's sole argument regarding the first tasing incident is that he didn't pose a danger to CCI staff because he was fully restrained. Dkt. 63, at 4–9. True, Lindsey was secured in a restraint chair when Hamidi tased him. But CCI staff needed to get him out of the restraint chair to conduct a strip search for contraband. Lindsey threatened CCI staff with violence ("I guarantee you gonna fight me for it") and foreshadowed that he would be noncompliant ("If y'all think I'm gonna comply with that, y'all got another thing coming. Get ready to use that taser."). Lindsey had previously moved his legs as if he was trying to kick CCI staff, and he was moving his legs and tensing his leg muscles once again. Lindsey's aggressive and confrontational conduct, and his repeated failure to comply with Hamidi's orders to stop resisting, presented an immediate risk of danger to CCI staff if they tried to remove him from the restraint chair. Hamidi's use of force during the first tasing incident was not unconstitutional.

Lindsey's sole argument regarding the second tasing incident is that it was unnecessary because he wasn't physically resistive. Dkt. 63, at 5. But Lindsey doesn't dispute that he was

6

making "target glances" at CCI staff, and "target glances" often precede kicking, striking, spitting, or other forms of sudden resistances. Dkt. 67, ¶ 90. Nor does he dispute being verbally resistive and combative ("Let's go. Let's go."). Moreover, although Lindsey was still in handcuffs and leg restraints, he was no longer secured in the restraint chair, and so, presented a greater threat to the safety of CCI staff than during the first tasing incident. Hamidi's use of force during the second tasing incident also was not unconstitutional.

In this case, Lindsey was uncooperative and combative from the start. He taunted and threatened Hamidi and other CCI staff, and he repeatedly said that he was not going to comply with Hamidi's orders. The undisputed facts drawn from uncontroverted video evidence establish that Hamidi's use of force was reasonable and not for an improper purpose. No reasonable jury could find Hamidi's actions to be unconstitutional. Because I conclude that Hamidi's actions weren't unconstitutional, I don't need to address qualified immunity or whether Xiong failed to intervene.

## B. Unreasonable strip search

Lindsey contends that Hamidi and Xiong conducted an unreasonable strip search in violation of his Fourth and Eighth Amendment rights. The video evidence utterly discredits Lindsey's assertion that Hamidi conducted the staff-assisted strip search; she stood to the side while Xiong searched Lindsey's buttocks, which is the only part of the search at issue. Lindsey can't hold Hamidi liable for the strip search itself because she wasn't personally involved in violating his rights. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

I will consider Lindsey's claim against Xiong under both the Eighth and Fourth Amendments. The Eighth Amendment protects prisoners against strip searches that are "maliciously motivated, unrelated to institutional security, and hence totally without

penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (cleaned up). To defeat defendants' motion for summary judgment, Lindsey must adduce evidence that Xiong conducted the strip search in "a harassing manner intended to humiliate and inflict psychological pain." *Jones v. Anderson*, 116 F.4th 669, 678 (7th Cir. 2024) (cleaned up).

The undisputed facts drawn from uncontroverted video evidence show that Xiong didn't search Lindsey's buttocks in a malicious or harassing manner. The search lasted six seconds. Xiong told Lindsey that he was going to search his buttocks and instructed him not to resist. Using the backs of his gloved hands, Xiong spread apart Lindsey's buttocks. Then, he moved the backs of his hands to the underside of Lindsey's buttocks. In that position, Xiong visually searched Lindsey's anus. While this occurred, Lindsey said: "You is not using bladed hands looking in my buttocks. And your fingers is in my [unintelligible]. Get your finger out of my [unintelligible]." Dkt. 57, Ex. 4 (Hamidi body cam, at 10:10–10:16). But the video footage shows that, once Xiong spread apart Lindsey's buttocks, his fingers remained on the underside of Lindsey's buttocks. Xiong didn't conduct the search of Lindsey's buttocks in a harassing or humiliating manner. He did it expediently, and he was justified in doing so: Xiong was looking for contraband.

The Fourth Amendment analysis is straightforward. The Fourth Amendment "protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020) (en banc). The factors relevant to this determination include: (1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it is conducted. *Alicea v. Cnty. of Cook*, 88 F.4th 1209, 1217 (7th Cir. 2023) (citation omitted). Here, Xiong conducted a brief

search of Lindsey's buttocks in a holding cell to determine whether Lindsey was hiding contraband in his anus. Xiong's search was reasonable, so Lindsey's Fourth Amendment claim also fails.

The undisputed facts establish that Xiong's search of Lindsey's buttocks wasn't unreasonable. Because I conclude that Xiong's actions weren't unconstitutional, I don't need to address qualified immunity or whether Hamidi failed to intervene.

ORDER

IT IS ORDERED that:

1.  Defendants Chong Xiong and Ghita Hamidi's motion for summary judgment, Dkt. 54, is GRANTED.

2.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered April 3, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

9